**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-352-JEB** |
| **MARC BRU,** | |
| **Defendant.** | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum for resentencing in connection with the above-captioned matter. For the reasons set forth herein, the government requests that Defendant Marc Bru be resentenced to 72 months of imprisonment, three years of supervised release, $2,000 in restitution, a $10,709 fine, and the mandatory special assessment of $180. With the exception of a higher fine (reflecting additional money raised by the defendant for his "legal defense" despite continuing to rely on Court-appointed counsel) and a lower special assessment (reflecting the removal of his felony conviction for obstruction of an official proceeding), this is the same sentence the Court imposed previously. *See* ECF No. 98. The Court has already found that a sentence of 72 months' incarceration is appropriate given the serious nature of Bru's crimes and his lack of remorse, and it remains the appropriate sentence even in the face of a considerably lower post-*Fischer* advisory Guidelines range.

## I.    FACTUAL BACKGROUND

The government incorporates the factual background from its previously filed Sentencing Memorandum. *See* ECF No. 92 at 4–15. The background includes a detailed description of Bru's conduct before, on, and after January 6, 2021, including his plans to lead an armed insurrection to

1

take over the government in Portland, Oregon and his abscTsion in this case while pending trial.

## II.    THE CHARGES AND TRIAL

On December 1, 2021, a federal grand jury returned a superseding indictment charging Bru with seven counts: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 2); Entering and Remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count 3); Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 4); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 § 5104(e)(2)(G) (Count 5); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 231(a)(3) (Count 6); and Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count 7). ECF No. 31.

On October 3, 2023, this Court convicted Bru on all seven counts. During trial, as detailed in the government's Sentencing Memorandum, Bru attempted to make a mockery of the proceeding. He refused to "consent" to trial and, after delaying the trial allegedly to "prepare," made no effort whatsoever to cross-examine the government's witnesses or put on a case. *See* ECF. No. 92 at 16–18.

Following trial, Bru continued his established pre-trial pattern of spreading disinformation, casting himself as a victim of political persecution, and making bombastic, threatening statements in public forums. *See* ECF. No 92 at 18–21; ECF No. 96 at 1–3. Most alarmingly, in the two days before his sentencing hearing, Bru stated that he intended to "command" the U.S. Marshals to arrest Chief Judge James E. Boasberg and the undersigned lead prosecutor for "human trafficking" at his sentencing if they did not comply with his demands. ECF No. 96 at 2. And he warned that

if the Speaker of the House and the then-former President didn't "fucking pull the trigger in a very short amount of time," he would start a nationwide prison riot. *Id.* at 3. Those pre-sentencing statements required additional U.S. Marshals to be brought in to provide security during Bru's sentencing hearing.

### III.    SENTENCING HEARING AND POST-SENTENCING STATEMENTS

On January 24, 2024, the Court sentenced Bru to 72 months' incarceration, three years' supervised release, a fine of $7,946, $2,000 in restitution, and a $280 special assessment. ECF No. 98. During the sentencing hearing, Bru was extraordinarily disruptive and disrespectful, interrupting both the government and the Court throughout the proceeding. On several occasions, Bru demanded the financial records of both the undersigned lead prosecutor and the Court. Sent. Tr. at 3, 6, 8. He accused the Court of running an illegal, fraudulent "fucking kangaroo court," and called the Honorable James E. Boasberg a "clown." *Id.* at 7, 9, 10. He blamed the government for causing the two DUIs he obtained while on pre-trial release. And he called the undersigned lead prosecutor "despicable and repugnant." *Id.* at 8–9.

When given an opportunity to speak at the conclusion of the government's allocution, instead of expressing remorse or regret (as countless other January 6 defendants have done), Bru defiantly and proudly stated "You can give me a hundred years, and I would do it all over again." *Id.* at 15. As this Court observed, Bru's statement was "the definition of no remorse." *Id.* at 17.

In determining Bru's sentence, the Court recognized that Bru's guidelines range of 70–87 months was largely driven by his 18 U.S.C. § 1512(c)(2) conviction (Count 7, Obstruction of an Official Proceeding). So, the Court began its statement of reasons by "mak[ing] clear that the sentence that [it] would impose would be the same even if Section 1512 was ultimately vacated by the Supreme Court in its review." *Id.* at 15. That was because Bru's "conduct both before January

3

6, during January 6, and after January 6, including up to [the sentencing hearing] . . . [gave it] little confidence that [Bru] will obey the laws upon any kind of release;" Bru acted aggressively on towards police on January 6; Bru picked up two DUIs and absconded while on pretrial release; Bru "continued to seek to radicalize others;" and Bru had failed to demonstrate remorse. *Id.* at 16–17.

The Court further explained that to arrive at a sentence of 72 months' imprisonment, it was imposing a sentence of five years—the statutory maximum—on Count 6 (18 U.S.C. § 231(a)(3)), followed by a consecutive 12-month sentence on Counts 1 and 2 (18 U.S.C. §§ 1752(a)(1) and (a)(2)) and a concurrent 6-month sentence on Counts 3, 4, and 5 (40 U.S.C. §§ 5104(e)(2)(B), (D), and (G)). *Id.* at 17. The Court then reiterated that if the 18 U.S.C. § 1512(c)(2) count was vacated and the guidelines were then "considerably lower," the Court "would vary upwards to five years for the reasons that [it] stated and that the government state[d] in its allocution, so "sentence would be the same." *Id.*

The Court also agreed with the government that Bru had "been seeking to profit off [his] behavior" through his GiveSendGo account titled "Donate to Marc Anthony Bru J6 Political Prisoner of War." *Id.* at 18. Accordingly, the Court imposed a fine of $7,946, the amount Bru had raised as of January 24, 2024. *Id.* In addition, the Court sentenced Bru to three years' supervised release, $2,000 in restitution, and a mandatory special assessment of $280.

## IV.    BRU'S POST-SENTENCING STATEMENTS AND PROFITS

Following his sentencing, Bru resumed spreading misinformation and making alarming statements from within the confines of the D.C. Jail. For example, on February 11, 2024, Bru called into the so-called "Freedom Corner" podcast. While discussing his hatred for President Biden, he stated the following:

***The fact is that these people need nothing less than a fucking rope.*** And I don't have any qualms about saying it. They're a bunch of fucking frauds. And the ones that are not fixing it are culpable. They know it by now. I have an affidavit that I actually put in two weeks ago. I have an affidavit that shows the exact law that shows, that explicitly details . . . it's the same thing that's up in the records. You can look at it on my case, twenty-five pages, it shows you with examples of the law that's been established that these guys are human trafficking. The judges, the court services, everybody. They're sucking off the tit of people's misery. And the media is holding everything at bay in keeping everything under wraps and distracting you from the real reality of this prison plan that is going on. It's at every level. And just imagine how bad it is at the juvenile level at CPS. I've got friends already that are contacting me on how to deal with CPS. And I'll tell everyone on the record, same thing I'm telling them, that they have no association with you, don't open the door, don't let them in, don't answer questions. ***And if they force their way in, shoot 'em . . . they're human trafficking.*** This whole government, this whole government is complicit in human trafficking until the day we say enough is enough and it's done. And I don't give a shit if they think I'm some sort of terrorist or domestic terrorist or whatever. Wrong is wrong. And I'll tell you something my grandfather, he was a bootlegger, he was a cattleman, and he wouldn't have stood for this. He would've fucking took us outta here already. I'll tell you he would've his papa johnny green tractor, John Deere tractor, into this fuckin facility and punctured that goddamn wall out there and take us outta here.[1]

Shortly after that statement, Bru was transferred from the D.C. Jail to federal prison. Presumably, he has since been largely deprived of access to public forums like the Freedom Corner. Nevertheless, donations continue to flow into Bru's still-active GiveSendGo account. As of November 15, 2024, he has raised a total of $10,709, nearly $3,000 of which has poured in since his original sentencing date.[2]

---

[1] 1791 storm trooper #PMHQ #j6politicalhostages #J6 #FREEDOMCORNER THE GREATEST SHOW ON EARTH Feb 11, at https://www.youtube.com/watch?v=AS919lHQUxE.

[2] "Marc Anthony Bru J6 Political Prisoner of War," GiveSendGo, available at: https://www.givesendgo.com/J6_Politically_Persecuted (last accessed November 15, 2024).



*Screenshot from Bru's GiveSendGo Fundraising Page (November 15, 2024)*

## V.    POST-SENTENCING LITIGATION

On June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. 480 (2024), which narrowed the application 18 U.S.C. § 1512(c)(2). As a result, the government now moves to vacate Bru's felony 1512(c)(2) conviction and proceed to resentencing on the remaining six counts.

## VI.    STATUTORY PENALTIES

Bru now faces sentencing on the six remaining counts of the Superseding Indictment. The maximum terms of incarceration for each count are detailed in the chart below.

| Count | Statute | Maximum Term of Imprisonment |
|:-----:|:-------:|:----------------------------:|
| 1 | 18 U.S.C. § 1752(a)(1) | 1 year |
| 2 | 18 U.S.C. § 1752(a)(2) | 1 year |
| 3 | 40 U.S.C. § 5104(e)(2)(B) | 6 months |
| 4 | 40 U.S.C. § 5104(e)(2)(D) | 6 months |
| 5 | 40 U.S.C. § 5104(e)(2)(G) | 6 months |
| 6 | 18 U.S.C. § 231(a)(3) | 5 years |

For the Class A misdemeanors—Counts 1 and 2—Bru also faces a maximum of one year of supervised release, a fine of up to $100,000, and a mandatory special assessment of $25 per count. For the Class B misdemeanors—Counts 3, 4, and 5—Bru also faces a fine of up to $5,000, and a mandatory special assessment of $10. And for the felony count—Count 6—Bru faces a term of supervised release of not more than three years, a fine of up to $250,000, and a mandatory special assessment of $100.

## VII.    THE UPDATED SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

The government provides the following amended sentencing calculations for the remaining counts:

Count One: 18 U.S.C. § 1752(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2B2.3(a) | Base Offense Level | 4 |
| U.S.S.G. § 2B2.3(b)(1)(A)(vii) | Special Offense Characteristic (Restricted Building or Grounds) | +2 |
| U.S.S.G. § 3C1.1 | Obstruction of Justice | +2 |
| | **Total** | **8** |

Count Two: 18 U.S.C. § 1752(a)(2)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| U.S.S.G. § 2A2.4(b)(1)(A) | Special Offense Characteristic (Restricted Building or Grounds) | +3 |
| U.S.S.G. § 3C1.1 | Obstruction of Justice | +2 |
| | **Total** | **15** |

Count Three: 18 U.S.C. § 231(a)(3)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| U.S.S.G. § 2A2.4(b)(1)(A) | Special Offense Characteristic (Restricted Building or Grounds) | +3 |
| U.S.S.G. § 3C1.1 | Obstruction of Justice | +2 |
| | **Total** | **15** |

| | |
|---|---|
| Counts Four, Five, and Six: | Class B misdemeanors to which the Sentencing Guidelines do not apply. *See* 40 U.S.C. § 5109(b); 18 U.S.C. § 3559(a)(7); U.S.S.G. § 1B1.9. |

| | |
|---|---|
| **Total Adjusted Offense Level:** | **15** |

Under U.S.S.G. §3D1.2(a) and (c), "closely related counts" group. Counts One and Two comprise a single group under U.S.S.G. §3D1.2(a) and (b) because the victim of each count is Congress. Those counts then group with Count 6 under U.S.S.G. §3D1.2(b) because those counts embody conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another count. PSR ¶ 57. Under U.S.S.G. §3D1.3(a), the offense level for a group of closely related counts is the highest offense level of the counts in each group. The highest offense level is 15 (for Counts Two and Three). Therefore, the combine offense level for the group is 15.

The U.S. Probation Office previously calculated Bru's criminal history as category I, which is not disputed and has not changed since the sentencing hearing. PSR ¶ 71. Accordingly, Bru's corresponding post-*Fischer* Guidelines range is 18 to 24 months' imprisonment.

## VIII.   THE SERIOUSNESS OF THE CRIMES – DEPARTURES AND VARIANCES

After determining Bru's Guidelines range, the Court then must consider any departures or variances. *See* U.S.S.G. § 1B1.1(a)–(c). Because Bru's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range.

Following *Fischer*, the government has now moved to vacate Bru's conviction under Count Seven, but that vacatur, as the Court has already recognized, does not lessen the severity of his crimes or their potential impact on the rule of law. Bru was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers, and caused more than 2.9 million dollars in losses. His offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and

foundational principles of our democracy. Like every member of the mob, Bru "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86–87.

But nothing in Bru's Guidelines calculation reflects these facts. Bru would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[3] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. So a sentence within Bru's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that

---

[3] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *Fischer* demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, 603 at 506 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[4] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. *See United States v. Wyatt*, 23-CR-215-RDM, Sent. Tr. at 44 ("He just wanted to delay the certification. He wanted the election certification stopped. That's chilling to me. I mean, that is not a minor thing, in that through—through acts of violence and intimidation, we're going to stop the most sacred day in our democracy from occurring, which is the certification of the election, because we want some more time to try and make our case because the dozens and

---

[4] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

dozens of courts that have considered the issue and have concluded there was not a problem with the election weren't enough, and because I want someone else to take another look at this. And so, therefore, I'm going to go down to the Capitol and I'm going to stop the certification of the election from occurring. So I think that the offense here, to my mind, is one of enormous gravity."); *United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85–86 ("The security breach forced lawmakers to hide inside the House gallery until they could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy.").

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory Guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And several judges of this Court have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory Guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

For example, recently, in *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory Guidelines range of 15–21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87–88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id.* at 94–95. Because Sparks' advisory Guidelines range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory Guidelines range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory Guidelines range of 37 to 46 months applied. *See Robertson*

Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

Likewise, in *United States v. Dunfee*, 23-CR-36-RBW, Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(a)(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36-RBW, ECF No. 90, at 2. After calculating an advisory Guidelines range of 18–24 months, the court sentenced Dunfee to 30 months of imprisonment.

Most recently, in *United States v. Oliveras*, 21-CR-738-BAH, Judge Howell sentenced a defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Howell found an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because

> after Fischer, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect

his intent to engage in political violence that poses such a threat to our American democracy… His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account.

*Oliveras*, Sentencing Tr. at p. 49. The court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G. §] 2J1.2 would have applied to defendant [pre-*Brock*] provide a general guide… [and] an upward departure within that range is appropriate." *Id.* at 49–50. The court also noted that it "would impose the same sentence with . . . an upward variance for the same reasons that are outlined in 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. After calculating an advisory Guidelines range of 37–46 months' imprisonment, the court sentenced Oliveras to 60 months of imprisonment.

Because the seriousness of Bru's crime is not adequately captured by the applicable Guidelines, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted.[5] An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up).

While the Supreme Court's decision in *Fischer* has changed Bru's advisory Guidelines range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4–5 (cleaned

---

[5] If the Court does apply a departure, the government requests that the Court also specify that it would have imposed the same sentence as a variance. See United States v. Brevard, 18 F.4th 722, 728-29 (D.C. Cir. 2021) (upholding the district court's sentence where the departure was erroneously applied but the district court indicated that it was also imposing the sentence as a variance).

up). Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95; *see also United States v. Kelly*, 21-CR-708-RCL, ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

In past sentencings, this court has made clear its view that "one of the most important features of a republic is the peaceful transfer of power where the party that loses an election cedes power to the party that triumphs at the election. And that's what happened in November 2020. Donald Trump lost the election to Joe Biden. And yet on January 6, a mob of people bent on undoing that election gathered in Washington and ultimately stormed the Capitol in what I have called and continue to call an insurrection, an attempt to install and empower the person who had lost at the ballot box." *United States v. Ballenger et al.*, 21-CR-719-JEB, Sent. Tr at 54. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of

law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[6]

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Meredith*, 21-CR-159-ABJ, Sent. Tr. at 94–95. If we are to prevent another January 6 and restore respect for the rule of law, sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

In addition to departing upwards, other courts have varied upward from the advisory Guidelines range specifically because of the unique and serious nature of the crimes committed on January 6; this Court should do the same. *See United States v. Reffitt,* 21-CR-32-DLF, Mem. Op. and Order 4/10/24 at 10–11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638-TJK, Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline]

---

[6] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

calculation allows.").[7]

In this case, an upward variance is warranted because it is necessary to reach an appropriate sentence: the original 72-month term of incarceration imposed by this Court.

## IX.    FINE

Bru's conviction under Section 231 still subjects him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b)(3). Because Bru continues to profit off his conduct on January 6, 2021, the government recommends that the Court increase Bru's fine from $7,946 to the current amount raised by Bru on his GiveSendGo website. As of November 15, 2024, that amount is $10,709.[8]

---

[7] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

[8] "Marc Anthony Bru J6 Political Prisoner of War," GiveSendGo, available at: https://www.givesendgo.com/J6_Politically_Persecuted (last accessed November 15, 2024).

## X.    CONCLUSION

For these reasons, the government recommends that the Court re-impose a sentence of 72 months of imprisonment, three years' supervised release, and $2,000 in restitution. The government also recommends that the Court impose an increased fine of $10,709. Without Count 7, Bru's mandatory special assessment is reduced to $180.

By:    */s/ Michael M. Gordon*
MICHAEL M. GORDON
Senior Trial Counsel, Capitol Siege Section
Assistant United States Attorney
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33606
michael.gordon3@usdoj.gov
(813) 274-6370


*/s/ Madison H. Mumma*
MADISON H. MUMMA
Trial Attorney
N.C. Bar No. 56546
1301 New York Ave. NW
Washington, D.C. 20530
madison.mumma@usdoj.gov
(202) 913-4794